IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARROD DOZIER, ROBERT BUSTAMANTE, and BARRY DURHAM,<br><br>   Plaintiffs,<br><br>vs.<br><br>AARON SALES & LEASE OWNERSHIP FOR LESS, a division of Aaron Rents, Inc., a Georgia Corporation,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.   06-CV-570 JHP-TLW |

**OPINION AND ORDER AS TO PLAINTIFF ROBERT BUSTAMANTE**

**I. INTRODUCTION**

Before the Court is Aaron Rents, Inc.'s ("Aaron Rents") Motion for Summary Judgment On the Claims of Plaintiff Robert Bustamante [Dkt #85]. Aaron Rents moves for summary judgment on Plaintiff Robert Bustamante's ("Bustamante") claims for wrongful discharge and intentional infliction of emotional distress. Bustamante is one of three named Plaintiffs – including Jarrod Dozier ("Dozier") and Barry Durham ("Durham") – who are also former Aaron Rents' employees and whose claims are the subject of motions for summary judgment filed by Aaron Rents.   [Dkt #s 87, 88, 83 and 84.]

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir.

1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 237.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. At 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

In the context of a motion for summary judgment, the non-movant must controvert material facts, with citations to the record. Thomas v. Wichita Coca Cola Bottling Co., 968 F.2d 1022, 1024-35 (10th Cir. 1992). Mere argument lacking supporting reference to the evidentiary record does not satisfy this requirement. August v. Offices Unlimited, Inc., 981 F.2d 576, 570 (1st Cir. 1992).

### III.   BUSTAMANTE'S WRONGFUL DISCHARGE CLAIM

Aaron Rents' corporate offices are located in Atlanta, Georgia.   In mid-January 2005, Bustamante transferred from Texas to Tulsa to assume the position of Regional Customer Accounts Manager for Aaron Rents.   At the time of his transfer, Dozier was Regional Manager.

According to Bustamante, Dozier informed Bustamante and Durham that on January 19, 2005, Aaron Rents' Regional Vice President, Bert Hanson ("Hanson"), and Dozier returned to Hanson's hotel room that evening with a woman.   According to Bustamante, Dozier told Durham and Bustamante that Hanson had touched the woman in an inappropriate manner, against her wishes.

As a result of those allegations, the woman filed a police report with the Tulsa Police Department ("TPD"), and a criminal investigation by the TPD ensued. Bustamante never discussed with anyone at Aaron Rents what Dozier told him about the evening and the events in Hanson's hotel room.   Bustamante had no involvement with the TPD criminal investigation, was not asked to become involved with the criminal investigation, and had no communication or contact with either the TPD or the District Attorney's office for any reason.   Bustamante did not know how the criminal investigation was concluded or when it was concluded.

On February 1, 2005, Aaron Rents terminated Dozier from his employment. Bustamante claims that, after Dozier was terminated, Hanson called Bustamante and asked Bustamante to ask Dozier to contact Hanson.   According to Bustamante, he informed Hanson he wanted to stay uninvolved, but would talk to Dozier and "relay his message".   After speaking with Dozier, Bustamante reported to Hanson that he had spoken with Dozier, but Dozier did not want to talk to Hanson.   In February 2005, Matt Holman replaced Dozier as Bustamante's Regional Manager.   On May 6, 2005, after some performance issues with Bustamante, Holman informed Bustamante he was

being demoted to a manager position. The circumstances of Bustamante's separation from employment are disputed. According to Holman, he understood Bustamante rejected the demotion to the manager position and treated the rejection as a resignation; Bustamante states that after taking some time to consider the manager position, he called back to accept the job, but the position had been filled. This difference in accounts of the circumstances of Bustamante's May 2006 separation from employment is immaterial for purposes of deciding this matter.

In Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), the Oklahoma Supreme Court recognized a wrongful discharge cause of action for those employees who are discharged in violation of public policy. 770 P.2d 29. An employee's discharge is potentially actionable if they are terminated because they refused to participate in an illegal activity, performed an important public obligation, exercised a legal right or interest, exposed wrongdoing by the employer, performed an act encouraged by public policy, or refused to perform an act condemned by public policy. Groce v. Foster, 880 P.2d 902, 904-05 (Okla. 1994). See also¸ Instruction 21.2 Oklahoma Uniform Jury Instruction – Civil 3rd ed. (Revised 2008).

When, as here, a wrongful discharge plaintiff claims he was fired in retaliation for his actions or failure to act as requested by his employer, the terminated employee must demonstrate the decision-maker was aware of these facts. E.g., Williams v. Rice, 983 F.2d 177-81 (10th Cir. 1993); Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000); Elliott v. American Airlines, Inc., 540 F.Supp.2d 1203 (N.D. Okla. 2008). Facts or information unknown to the decision-maker when the decision to terminate is made cannot serve as the employer's motivation; nor can it support an action for public policy wrongful discharge. Id.; see also, Vasek v. Board of County Com'rs of Noble County, 2008 OK 35, ¶ 14; Mosley v. Truckstops Corp. of America, 1993 OK 79, ¶¶ 8-12 and 18; Summers v. State Farm Mut. Auto. Ins. Co., 864 F.2d

700, 705 (10th Cir. 1988).

There is no claim by Bustamante that he refused to participate in illegal activity, performed some important public obligation, exercised a legal right or interest, exposed some wrongdoing by Aaron Rents, performed an act encouraged by public policy, or refused to do something condemned by public policy. Bustamante was not involved in the TPD criminal investigation, nor was he asked to become involved with the criminal investigation; Bustamante never discussed with anyone at Aaron Rents what Dozier had told him about the events of January 19, 2005. According to Bustamante, he was terminated because he knew about the January 19, 2005 events at Hanson's hotel room and Hanson's alleged bad conduct. Mere knowledge of alleged bad conduct does not give rise to the wrongful discharge public policy tort under Oklahoma law. *Pitts v. Electrical Power Systems, Inc.*, 2008 WL 2364998 *2 (N.D. Okla. 2008).

Nor is there adequate evidence supporting any claim that retaliation was a factor in his alleged discharge. Bustamante had no involvement with the criminal investigation, was not asked to become involved in the criminal investigation, and was not interviewed in connection with the criminal investigation or Aaron Rents' internal investigation.

Accordingly, Aaron Rents' Motion for Summary Judgment on Bustamante's claim for wrongful discharge in violation of an Oklahoma public policy is granted.

Further, in order to maintain a public policy wrongful discharge claim, Bustamante must identify a clear and compelling public policy articulated in Oklahoma constitutional, statutory or jurisprudential law. *McCrady v. Oklahoma Dept. Public Safety*, 122 P.3d 473, 475 (Okla. 2005). Whether Bustamante has satisfied that requirement is a question of law to be resolved by the Court. *Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543 546 (Okla. 2001); *McCrady*, 122 P.3d at 475. Bustamante has failed to adequately identify an Oklahoma public policy on which his

wrongful discharge claim is based.

Accordingly, this failure is an additional and independent basis for granting Aaron Rents' motion for summary judgment as to Bustamante's claim for wrongful discharge in violation of Oklahoma public policy.

### IV.   BUSTAMANTE'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Under Oklahoma law, a cause of action for intentional infliction of emotional distress is governed by the narrow standards laid out in the Restatement (Second) of Torts § 46, 1965.  *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998); *Breeden v. League Services Corp.,* 575 P.2d 1374 (Okla. 1978).  To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Id.; see also Zeran v. Diamond Broadcasting, Inc.*, 203 F.3d 714, 721 (10th Cir. 2000) (applying Oklahoma law).   Quoting the Restatement, the Oklahoma Supreme Court in *Breeden* stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.*, at 1376.

Oklahoma law requires the trial court to act as a "gatekeeper" and  initially determine, as a matter of law, if the defendant's alleged conduct is sufficiently extreme and outrageous, as defined in Restatement of Torts (Second) §46, to allow  recovery. *Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 856 (10th Cir. 2005); *Breeden* at 1377;

*Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986).   Further, "[i]t is also the trial court's initial responsibility to determine whether the stress allegedly suffered by the plaintiff is severe emotional distress."   *Zeran*, at 721.

In the employment context, courts have considered a range of conduct claimed by a plaintiff to be sufficient to merit a cause of action for intentional infliction of emotional distress.  The courts have consistently applied a very high threshold before recognizing a cause of action for intentional infliction of emotional distress under Oklahoma law concerning employment claims.   *Eddy*, 715 P.2d at 77.[1]

It is also the Court's initial responsibility to determine whether the distress allegedly suffered by a plaintiff is severe emotional distress. *Joffe v. Vaughn*, 873 P.2d 299, 302 n.6 (Okla. Civ. App. 1993).  "In other words, the distress must be of such character that 'no reasonable person could be expected to endure it.'"   *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1389 (10th Cir. 1991) (quote omitted). The suffering experienced by a plaintiff must be extreme or utterly intolerable in a civilized society. *See Eddy,* 715 P.2d at 77; *E.E.O.C. v. Voss Elec. Co. d/b/a Voss Lighting*, 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003).   Further, the extreme emotional distress must actually be caused by the tortfeasor's conduct. *See Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735; *Warren v. United States Specialty Sports Assn.*, 138 P.3d 580 (Okla. Civ. App. 2006) (citing *Computer Publ'n, supra*).

Bustamante cannot show Aaron Rents' conduct was sufficiently extreme and outrageous, or that Aaron Rents' conduct actually caused Bustamante's alleged emotional distress. Further, Bustamante cannot demonstrate that Aaron Rents acted recklessly or intentionally in causing emotional distress. Accordingly, Aaron Rents' Motion for Summary Judgment as to Bustamante's claim for intentional infliction of emotional distress is granted.

**IT IS SO ORDERED this 20th day of April, 2009.**

Dozier 1.DOC

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[1] See also, *Smith v. Farmers Co-op. Ass'n of Butler*, 825 P.2d 1323, 1328 (Okla. 1992); *Eddy v. Brown,* 715 P.2d 74 (Okla. 1986); *Ishmael v. Andrew*, 137 P.3d 1271, 1277 (Okla. Civ. App. 2006); *Gabler v. Holder and Smith, Inc.,* 11 P.3d 1269 (Okla. Civ. App. 2000); *Mirzaie v. Smith Congeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998); *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P.2d 574 (Okla. Civ. App. 1996); *Haynes v. South Community Hosp. Management, Inc.*, 793 P.2d 303 (Okla. Civ. App. 1990)**;** *Kramer v. Sears Roebuck and Co.* 108 F.3d 1388, 1997 WL 141175, *4 (10th Cir. 1997); *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1388 (10th Cir. 1991); *Merrick v. N. Natural Gas Co.*, 911 F.2d 426, 432-33 (10th Cir. 1990); *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1379 (10th Cir. 1989); *Seeber v. Williams Companies, Inc.*, 2006 WL 2524249, *19 (N.D. Okla. 2006); *Wood v. Handy & Harman Co.*, 2006 WL 3228710, 11 (N.D. Okla. 2006); [EEOC v. Voss Electric Co., 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003)](); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995); *Tatum v. Philip Morris Inc.*, 809 F.Supp. 1452, 1470 (W.D. Okla. 1992).