IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARROD DOZIER, ROBERT BUSTAMANTE, and BARRY DURHAM, <br><br>Plaintiffs, <br><br>vs. <br><br>AARON SALES & LEASE OWNERSHIP FOR LESS, a division of Aaron Rents, Inc., a Georgia Corporation, <br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.   06-CV-570 JHP-TLW |

## OPINION AND ORDER AS TO PLAINTIFF JARROD DOZIER

### I.    INTRODUCTION

Before the Court is Aaron Rents, Inc.'s ("Aaron Rents") Motion for Summary Judgment On the Claims of Plaintiff Jarrod Dozier [Dkt #87].   Aaron Rents moves for summary judgment on Plaintiff Jarrod Dozier's ("Dozier") claims for wrongful discharge and intentional infliction of emotional distress.1   Dozier is one of three named Plaintiffs – including Robert Bustamante ("Bustamante") and Barry Durham ("Durham") – who are also former Aaron Rents' employees and whose claims are the subject of motions for summary judgment filed by Aaron Rents.   [Dkt #s 85, 86, 83 and 84.]   The claims of Bustamante and Durham, and disposition of Aaron Rents' associated motions for summary judgment, are addressed by separate Opinions and Orders.

### II.    SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate when there is no

---

**1 As noted herein, Dozier conceded summary judgment should be entered against him on his tortious interference of contract claim.   (pp. 10-11, *infra*.)**

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 237.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* At 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker,* 164 F.3d 1249, 1251 (10th Cir. 1998).

In the context of a motion for summary judgment, the non-movant must controvert material facts, with citations to the record. *Thomas v. Wichita Coca Cola Bottling Co.*, 968 F.2d 1022, 1024-35 (10th Cir. 1992). Mere argument lacking supporting reference to

the evidentiary record does not satisfy this requirement. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 570 (1st Cir. 1992).

## DOZIER'S WRONGFUL DISCHARGE CLAIM

Aaron Rents' corporate offices are located in Atlanta, Georgia. In January 2005, Bert Hanson ("Hanson") was a Regional Vice President for Aaron Rents, who worked and lived in Dallas, Texas. Dozier was a Regional Manager for Aaron Rents, reporting to Hanson and living in Oklahoma. On January 19, 2005, Hanson and Dozier went to Night Trips, a Tulsa nightclub, and invited a dancer at the club, Michelle "Ivy" Brown, to leave the club with them to get something to eat. Later that evening, Hanson, Dozier, Brown and another dancer from the club, Holly Conklin, were in Hanson's hotel room, where they ordered pizza. Eventually, Dozier called Brown's husband, Stacy Brown, who came to the hotel room to take his wife home. Dozier knew Brown was married to an Aaron Rents' employee; the parties dispute whether Hanson knew Ms. Brown was an employee's spouse; however, this is immaterial for purposes of this motion. The parties also dispute the specifics of what transpired at the hotel room. Likewise, this is immaterial for purposes of deciding this matter.

On or about January 20, 2005, Ms. Brown filed a police report with the Tulsa Police Department ("TPD"). Ms. Brown accused Hanson of touching her inappropriately and without her consent. Hanson and Dozier prepared written statements denying inappropriate misconduct on the part of Hanson. A written statement was also obtained from Conklin by Dozier, which similarly denied misconduct. The Hanson, Dozier and Conklin written statements were provided to TPD for its criminal investigation. These written statements were also provided to Aaron Rents' corporate office in Atlanta as part of the Company's internal investigation of an employee complaint initiated by Stacy Brown. According to Dozier, Hanson asked him to prepare a false statement, protecting Hanson and omitting information about events in the hotel room. Dozier also claims

Hanson asked him to obtain a false statement from Conklin, which also protected Hanson. Hanson denies Dozier's claim the written statements were false and also denies requesting false statements.

Ms. Brown's husband, Stacy Brown, was an employee of Aaron Rents and called a toll free number maintained by Aaron Rents for employee complaints. Stacy Brown complained to Aaron Rents that his wife had become intoxicated and coerced into coming to Hanson's hotel room, where she was groped and inappropriate comments were made to her. Aaron Rents' Senior Legal Counsel, Chad Strickland, investigated Stacy Brown's complaint. Strickland reported to Aaron Rents' President, Ken Butler. Strickland's investigation included a review of Hanson, Dozier and Conklin's written statements, as well as interviews of Hanson, Dozier and Stacy Brown. Strickland requested Stacy Brown to provide a statement from Ms. Brown, but it was never provided to Aaron Rents.

Before being terminated by Aaron Rents, Dozier spoke on one occasion with the TPD. On this occasion, Dozier reported to the TPD there was no wrongdoing or inappropriate conduct on the part of Hanson in the hotel room. Hanson had informed Aaron Rents of the criminal charges. On January 27, 2005, Hanson told Aaron Rents the criminal charges against him had been dropped.

As a result of Strickland's investigation, Aaron Rents' President Butler believed both Dozier and Hanson had exhibited unacceptable behavior and judgment, when Ms. Brown was invited to return with them to Hanson's hotel room. On February 1, 2005, Butler decided Dozier deserved to be fired, because he knew Ms. Brown was married to an Aaron Rents' employee and because Butler considered Dozier to have been on probation.[2] Because he had not previously demonstrated any performance issues, Butler decided Hanson would be placed on a six month probation, forfeit a $10,000 raise and stock options, attend a professional conduct session, and be advised that any further

---

[2] **Dozier disputes whether he was on probation at the time he was terminated; however, this is immaterial for purposes of deciding this matter.**

inappropriate or unbecoming behavior would result in his immediate termination.

Before he was terminated, Dozier never claimed to Aaron Rents the witnesses' statements were untruthful or inaccurate. Before he was terminated, Dozier never claimed to Aaron Rents that Hanson had pressured him to give false information to Aaron Rents or TPD.

After his February 1, 2005 termination from Aaron Rents, Dozier had a second conversation with the TPD, where Dozier changed his story and claimed Hanson, Conklin and his statements were untrue. In this post-termination conversation with TPD, Dozier reported for the first time he had witnessed Hanson touching Ms. Brown in an inappropriate manner. Aaron Rents never had any communication with TPD regarding charges filed against Hanson or its criminal investigation of those charges.

In *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), the Oklahoma Supreme Court recognized a wrongful discharge cause of action for those employees who are discharged in violation of public policy. 770 P.2d 29. An employee's discharge is potentially actionable if he is terminated because he refused to participate in an illegal activity, performed an important public obligation, exercised a legal right or interest, exposed wrongdoing by the employer, performed an act encouraged by public policy, or refused to perform an act condemned by public policy. *Groce v. Foster*, 880 P.2d 902, 904-05 (Okla. 1994). *See also*, Instruction 21.2 Oklahoma Uniform Jury Instruction – Civil 3rd ed. (Revised 2008).

When, as here, a wrongful discharge plaintiff claims he was fired in retaliation for his actions or failure to act as requested by his employer, the terminated employee must demonstrate the decision-maker was aware of these facts. *E.g., Williams v. Rice*, 983 F.2d 177-81 (10th Cir. 1993); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Elliott v. American Airlines, Inc.*, 540 F.Supp.2d 1203 (N.D. Okla. 2008). Facts or information unknown to the decision-maker when the decision to

terminate is made cannot serve as the employer's motivation; nor can it support an action for public policy wrongful discharge. *Id.*; *see also, Vasek v. Board of County Com'rs of Noble County,* 2008 OK 35, ¶ 14; *Mosley v. Truckstops Corp. of America*, 1993 OK 79, ¶¶ 8-12 and 18; *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 705 (10th Cir. 1988).

Taking Dozier's accusations as true, Dozier did not refuse to perform an act. According to Dozier, he provided Aaron Rents and TPD false information regarding the events of January 19, 2005, as directed by Hanson.[3]

Again, taking Dozier's accusations as true, before he was terminated, Dozier never claimed to Aaron Rents he had provided the employer or TPD false or inaccurate information. Additionally, before he was terminated, Dozier never claimed to Aaron Rents that Hanson or anyone else had pressured him to give false information to Aaron Rents or TPD.[4] Indeed, throughout Aaron Rents' investigation, Dozier never claimed statements or information he provided to the employer were inaccurate or that he had witnessed any inappropriate conduct by Hanson. Assuming Dozier's accusations are true, it was only after his termination that Dozier claimed to the TPD those statements and his account of the events of January 19, 2005 were untrue.[5]

Accordingly, based on these facts and the other undisputed evidence in the record, Aaron Rents' motion for summary judgment on Dozier's claim for wrongful

---

[3] **Although in his Response Brief [Dkt #147], Dozier asserts he was coerced to provide the false information, Dozier failed to offer evidence to support his accusation. In any event, this contention is immaterial as to the issue of summary judgment.**

[4] **Although in his Response Brief [Dkt #147], Dozier asserts he told President Butler in the telephone call terminating his employment about pressure or coercion, Dozier failed to offer evidence to support that accusation.**

[5] **Dozier criticizes Aaron Rents' investigation of the events of January 19, 2005 as inadequate. Dozier also complains Aaron Rents acted unfairly when it assessed Dozier more severe discipline than Hanson for their January 19, 2005 misconduct. Neither of these arguments convert an employment termination into an actionable claim for public policy wrongful discharge.**

discharge in violation of Oklahoma public policy is granted.

Further, in order to maintain a public policy wrongful discharge claim, Dozier must identify a clear and compelling public policy articulated in Oklahoma constitutional, statutory or jurisprudential law. *McCrady v. Oklahoma Dept. Public Safety*, 122 P.3d 473, 475 (Okla. 2005). Whether Dozier has satisfied that requirement is a question of law to be resolved by the Court. *Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543 546 (Okla. 2001); *McCrady*, 122 P.3d at 475. Dozier has failed to adequately identify an Oklahoma public policy on which his wrongful discharge claim is based.

Accordingly, this failure is an additional and independent basis for granting Aaron Rents' motion for summary judgment as to Dozier's claim for wrongful discharge in violation of Oklahoma public policy.

### IV.     DOZIER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Under Oklahoma law, a cause of action for intentional infliction of emotional distress is governed by the narrow standards laid out in the Restatement (Second) of Torts § 46, 1965. *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998); *Breeden v. League Services Corp.,* 575 P.2d 1374 (Okla. 1978). To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Id.; see also Zeran v. Diamond Broadcasting, Inc.*, 203 F.3d 714, 721 (10th Cir. 2000) (applying Oklahoma law). Quoting the Restatement, the Oklahoma Supreme Court in *Breeden* stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the

> facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.*, at 1376.

Oklahoma law requires the trial court to act as a "gatekeeper" and initially determine, as a matter of law, if the defendant's alleged conduct is sufficiently extreme and outrageous, as defined in Restatement of Torts (Second) §46, to allow recovery. *Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 856 (10th Cir. 2005); *Breeden* at 1377; *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986). Further, "[i]t is also the trial court's initial responsibility to determine whether the stress allegedly suffered by the plaintiff is severe emotional distress." *Zeran*, at 721.

In the employment context, courts have considered a range of conduct claimed by a plaintiff to be sufficient to merit a cause of action for intentional infliction of emotional distress. The courts have consistently applied a very high threshold before recognizing a cause of action for intentional infliction of emotional distress under Oklahoma law concerning employment claims. *Eddy*, 715 P.2d at 77.[6]

It is also the Court's initial responsibility to determine whether the distress allegedly suffered by a plaintiff is severe emotional distress. *Joffe v. Vaughn*, 873 P.2d 299, 302 n.6 (Okla. Civ. App. 1993). "In other words, the distress must be of such character that 'no reasonable person could be expected to endure it.'" *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1389 (10th Cir. 1991) (quote omitted). The

---

[6] See also, *Smith v. Farmers Co-op. Ass'n of Butler*, 825 P.2d 1323, 1328 (Okla. 1992); *Eddy v. Brown,* 715 P.2d 74 (Okla. 1986); *Ishmael v. Andrew*, 137 P.3d 1271, 1277 (Okla. Civ. App. 2006); *Gabler v. Holder and Smith, Inc.,* 11 P.3d 1269 (Okla. Civ. App. 2000); *Mirzaie v. Smith Congeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998); *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P.2d 574 (Okla. Civ. App. 1996); *Haynes v. South Community Hosp. Management, Inc.*, 793 P.2d 303 (Okla. Civ. App. 1990)**;** *Kramer v. Sears Roebuck and Co.* 108 F.3d 1388, 1997 WL 141175 *4 (10th Cir. 1997); *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1388 (10th Cir. 1991); *Merrick v. N. Natural Gas Co.*, 911 F.2d 426, 432-33 (10th Cir. 1990); *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1379 (10th Cir. 1989); *Seeber v. Williams Companies, Inc.*, 2006 WL 2524249 *19 (N.D. Okla. 2006); *Wood v. Handy & Harman Co.*, 2006 WL 3228710 *11 (N.D. Okla. 2006); [EEOC v. Voss Electric Co., 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003)](#); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995); *Tatum v. Philip Morris Inc.*, 809 F.Supp. 1452, 1470 (W.D. Okla. 1992).

suffering experienced by a plaintiff must be extreme or utterly intolerable in a civilized society. *See Eddy,* 1986 OK 3, 715 P.2d at 77; *E.E.O.C. v. Voss Elec. Co. d/b/a Voss Lighting*, 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003). Further, the extreme emotional distress must actually be caused by the tortfeasor's conduct. *See Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735; *Warren v. United States Specialty Sports Assn*, 138 P.3d 580 (Okla. Civ. App. 2006) (citing *Computer Publ'n, supra*).

Dozier cannot show Aaron Rents' conduct was sufficiently extreme and outrageous, or that Aaron Rents' conduct actually caused Dozier's alleged emotional distress. Further, Dozier cannot demonstrate Aaron Rents acted recklessly or intentionally in causing emotional distress. Accordingly, Aaron Rents' Motion for Summary Judgment as to Dozier's claim for intentional infliction of emotional distress is granted.

## V.   DOZIER'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM

Dozier has conceded summary judgment should be entered against him on his tortious interference claim. [Dkt #147, p. 17.] *See also, Eckholt v. American Business Information, Inc.*, 873 F.Supp. 526, 534 (D.Kan. 1994) (holding that where parties did not respond to an issue in summary judgment motion, parties relinquished any claim on the issue and conceded that summary judgment should be entered against them). The Court should "accept as true all material facts asserted and properly supported in the summary judgment motion regarding this claim." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Because the undisputed facts entitle Aaron Rents to judgment as a matter of law, summary judgment is granted on this claim.

**IT IS SO ORDERED this 20th day of April, 2009.**

James H. Payne
United States District Judge
Northern District of Oklahoma