IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARROD DOZIER, ROBERT BUSTAMANTE, and BARRY DURHAM, <br><br> Plaintiffs, <br><br> vs. <br><br> AARON SALES & LEASE OWNERSHIP FOR LESS, a division of Aaron Rents, Inc., a Georgia Corporation, <br><br> Defendant. | Case No. 06-CV-570 JHP-TLW |

**OPINION AND ORDER AS TO PLAINTIFF BARRY DURHAM**

### I. INTRODUCTION

Before the Court is Aaron Rents, Inc.'s ("Aaron Rents") Motion for Summary Judgment On the Claims of Plaintiff Barry Durham [Dkt #83]. Aaron Rents moves for summary judgment on Plaintiff Barry Durham's ("Durham") claims for wrongful discharge and intentional infliction of emotional distress. Durham is one of three named Plaintiffs – including Robert Bustamante ("Bustamante") and Jarrod Dozier ("Dozier") – who are also former Aaron Rents' employees and whose claims are the subject of motions for summary judgment filed by Aaron Rents. [Dkt #s 85, 86, 87 and 88.] The claims of Bustamante and Dozier, and disposition of Aaron Rents' associated Motions for Summary Judgment, are addressed by separate Opinions and Orders.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 237.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* At 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker,* 164 F.3d 1249, 1251 (10th Cir. 1998).

In the context of a motion for summary judgment, the non-movant must controvert material facts, with citations to the record. *Thomas v. Wichita Coca Cola Bottling Co.*, 968 F.2d 1022, 1024-35 (10th Cir. 1992). Mere argument lacking supporting reference to the evidentiary

record does not satisfy this requirement. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir. 1992).

### III.  DURHAM'S WRONGFUL DISCHARGE CLAIM

In 2005, Durham was an Aaron Rents' Regional Sales Manager reporting to Regional Manager Jarrod Dozier.  Bustamante was also employed by Aaron Rents.  According to Durham, in late January Dozier informed him and Bustamante that on January 19, 2005, Aaron Rents' Regional Vice President Bert Hanson ("Hanson") and Dozier brought an exotic dancer to Hanson's hotel room.  According to Durham, Dozier told Bustamante and Durham that Hanson had touched the exotic dancer in an inappropriate manner, against her wishes.  As a result of the exotic dancer filing a police report with the Tulsa Police Department ("TPD"), a criminal investigation by the TPD ensued.  According to Durham, during the TPD's criminal investigation, Hanson exerted pressure on him by telling Durham he was innocent and explaining to Durham he had done nothing wrong.

In February 2005, Matt Holman replaced Dozier as Regional Manager, and for the first time began working with Durham.  Although Holman had heard rumors about the events in Hanson's hotel room on January 19, 2005, he did not care to know anything about the situation and told his employees that was the case.  On February 14, 2005, Holman terminated Durham for violation of Aaron Rents' policies and procedures.  Durham denies he violated any policies or procedures.

Before his February 14, 2005 discharge, Durham did not inform Aaron Rents or the TPD there was any wrongdoing on the part of Hanson or any cover-up by Hanson.  Durham never told

anyone at Aaron Rents he felt Hanson was trying to get him to pressure Dozier to withhold information.

In *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), the Oklahoma Supreme Court recognized a wrongful discharge cause of action for those employees who are discharged in violation of public policy. *Id. at 29.* An employee's discharge is potentially actionable if he is terminated because he refused to participate in an illegal activity, performed an important public obligation, exercised a legal right or interest, exposed wrongdoing by the employer, performed an act encouraged by public policy or refused to perform an act condemned by public policy. *Groce v. Foster*, 880 P.2d 902, 904-05 (Okla. 1994).  *See also,* Instruction 21.2 Oklahoma Uniform Jury Instruction – Civil, 3rd ed. (Revised 2008).

When, as here, a wrongful discharge plaintiff claims he was fired in retaliation for his actions or failure to act as requested by his employer, the terminated employee must demonstrate the decision-maker was aware of these facts. *E.g., Williams v. Rice*, 983 F.2d 177-81 (10th Cir. 1993); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Elliott v. American Airlines, Inc.*, 540 F.Supp.2d 1203 (N.D. Okla. 2008).  Facts or information unknown to the decision-maker, when the decision to terminate is made cannot serve as the employer's motivation, nor can it support an action for public policy wrongful discharge. *Id.*; *see also, Vasek v. Board of County Com'rs of Noble County*, 2008 OK 35, ¶ 14; *Mosley v. Truckstops Corp. of America*, 1993 OK 79, ¶¶ 8-12 and 18; *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 705 (10th Cir. 1988).

Durham claims he was fired based upon his loyalty to Dozier and because of his knowledge of Hanson's conduct on January 19, 2005.  Durham does not identify anything illegal he was asked to do.  Durham does not identify any request for him to interfere with any Aaron

Rents' internal personnel investigation or TPD's criminal investigation. Durham did not speak with TPD regarding the events of January 19, 2005 until after both he and Dozier had already been fired by Aaron Rents. Prior to his termination, Durham did not refuse to participate in an illegal activity, did not perform an important public obligation, did not exercise a legal right or interest, did not expose some wrongdoing of his employer, and did not perform an act encouraged by public policy or refused to perform an act condemned by public policy. Durham's knowledge of bad conduct allegedly committed by Hanson does not amount to wrongful discharge under Oklahoma law. *Pitts v. Electrical Power Systems, Inc.*, 2008 WL 2364998, *2 (N.D. Okla. 2008). Nor has Durham offered adequate evidence that retaliation was a factor, much less a significant factor, in his discharge by Aaron Rents.

Accordingly, based on these facts and the other undisputed evidence in the record, Aaron Rents' motion for summary judgment on Durham's claim for wrongful discharge in violation of Oklahoma public policy is granted.

Further, in order to maintain a public policy wrongful discharge claim, Durham must identify a clear and compelling public policy articulated in Oklahoma constitutional, statutory or jurisprudential law. *McCrady v. Oklahoma Dept. Public Safety*, 122 P.3d 473, 475 (Okla. 2005). Whether Durham has satisfied that requirement is a question of law to be resolved by the Court. *Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543 546 (Okla. 2001) *McCrady*, 122 P.3d at 475. Durham has failed to adequately identify an Oklahoma public policy on which his wrongful discharge claim is based.

Accordingly, this failure is an additional and independent basis for granting Aaron Rents' motion for summary judgment as to Durham's claim for wrongful discharge in violation of Oklahoma public policy.

## IV. DURHAM'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Under Oklahoma law, a cause of action for intentional infliction of emotional distress is governed by the narrow standards laid out in the Restatement (Second) of Torts § 46, 1965. *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998); *Breeden v. League Services Corp.,* 575 P.2d 1374 (Okla. 1978). To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Id.; see also Zeran v. Diamond Broadcasting, Inc.*, 203 F.3d 714, 721 (10th Cir. 2000) (applying Oklahoma law). Quoting the Restatement, the Oklahoma Supreme Court in *Breeden* stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.*, at 1376.

Oklahoma law requires the trial court to act as a "gatekeeper" and initially determine, as a matter of law, if the defendant's alleged conduct is sufficiently extreme and outrageous, as defined in Restatement of Torts (Second) §46, to allow recovery. *Trentadue ex rel. Aguilar v. U.S.,* 397 F.3d 840, 856 (10th Cir. 2005); *Breeden* at 1377; *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986). Further, "[i]t is also the trial court's initial responsibility to determine whether the stress allegedly suffered by the plaintiff is severe emotional distress." *Zeran*, at 721.

In the employment context, courts have considered a range of conduct claimed by a plaintiff to be sufficient to merit a cause of action for intentional infliction of emotional distress. The courts have consistently applied a very high threshold before recognizing a cause of action for intentional infliction of emotional distress under Oklahoma law concerning employment claims. *Eddy*, 715 P.2d at 77.[1]

It is also the Court's initial responsibility to determine whether the distress allegedly suffered by a plaintiff is severe emotional distress. *Joffe v. Vaughn*, 873 P.2d 299, 302 n.6 (Okla. Civ. App. 1993). "In other words, the distress must be of such character that 'no reasonable person could be expected to endure it.'" *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1389 (10th Cir. 1991) (quote omitted). The suffering experienced by a plaintiff must be extreme or utterly intolerable in a civilized society. *See Eddy,* 715 P.2d at 77; *E.E.O.C. v. Voss Elec. Co. d/b/a Voss Lighting*, 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003). Further, the extreme emotional distress must actually be caused by the tortfeasor's conduct. *See Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735; *Warren v. United States Specialty Sports Assn.*, 138 P.3d 580 (Okla. Civ. App. 2006) (citing *Computer Publ'n, supra*).

Durham cannot show Aaron Rents' conduct was sufficiently extreme and outrageous, or that Aaron Rents acted recklessly or intentionally in causing emotional distress. Further,

---

[1] See also, *Smith v. Farmers Co-op. Ass'n of Butler*, 825 P.2d 1323, 1328 (Okla. 1992); *Eddy v. Brown,* 715 P.2d 74 (Okla. 1986); *Ishmael v. Andrew*, 137 P.3d 1271, 1277 (Okla. Civ. App. 2006); *Gabler v. Holder and Smith, Inc.,* 11 P.3d 1269 (Okla. Civ. App. 2000); *Mirzaie v. Smith Congeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998); *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P.2d 574 (Okla. Civ. App. 1996); *Haynes v. South Community Hosp. Management, Inc.*, 793 P.2d 303 (Okla. Civ. App. 1990)**;** *Kramer v. Sears Roebuck and Co.* 108 F.3d 1388, 1997 WL 141175 *4 (10th Cir. 1997); *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1388 (10th Cir. 1991); *Merrick v. N. Natural Gas Co.*, 911 F.2d 426, 432-33 (10th Cir. 1990); *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1379 (10th Cir. 1989); *Seeber v. Williams Companies, Inc.*, 2006 WL 2524249 *19 (N.D. Okla. 2006); *Wood v. Handy & Harman Co.*, 2006 WL 3228710 *11 (N.D. Okla. 2006); [EEOC v. Voss Electric Co., 257 F.Supp.2d 1354, 1363 (W.D. Okla. 2003)](#); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995); *Tatum v. Philip Morris Inc.*, 809 F.Supp. 1452, 1470 (W.D. Okla. 1992).

Durham cannot demonstrate Aaron Rents' conduct actually caused his alleged emotional distress, or that the emotional distress alleged by him was sufficiently severe. Accordingly, Aaron Rents' Motion for Summary Judgment as to Durham's claim for intentional infliction of emotional distress is granted.

IT IS SO ORDERED THIS 20th day of April, 2009.

James H. Payne
United States District Judge
Northern District of Oklahoma

Dozier 4.wpd